```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

NANCY HILL,

                Plaintiff,            6:17-CV-6770(MAT)

   -v-                                    **DECISION AND ORDER**

NANCY A. BERRYHILL, Acting Commissioner
of Social Security,

                Defendant.
_____

**INTRODUCTION**

Nancy Hill ("Plaintiff"), represented by counsel, brings this action under Title II of the Social Security Act ("the Act"), seeking review of the final decision of Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner" or "Defendant"),[1] denying her application for disability insurance benefits ("DIB"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, this matter is remanded, as the Commissioner's decision is legally erroneous and not supported by substantial evidence.

---

[1] Nancy A. Berryhill is no longer serving in this position. The Clerk of Court therefore is directed to substitute "The Commissioner of Social Security" for "Nancy A. Berryhill, Acting Commissioner of Social Security" as the defendant in this action. See 20 C.F.R. § 422.210(d).

**PROCEDURAL BACKGROUND**

On October 6, 2014, Plaintiff protectively filed for DIB, alleging disability beginning June 5, 2014. (Administrative Transcript ("T.") 245-48). The claim was initially denied on February 10, 2015, and Plaintiff timely requested a hearing. (T. 159, 177-78). A hearing was conducted via videoconference on June 9, 2016, by Administrative Law Judge Michael Carr ("the ALJ"). (T. 130-58). Plaintiff appeared with her attorney and testified. A vocational expert ("VE") also testified.

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (T. 117). At step two, the ALJ found Plaintiff had the severe impairments of Chiari malformation,[2] degenerative changes in her lumbar spine, headaches, and affective disorder. (Id.). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any

---

[2] A Chiari malformation is a structural defect in the base of the skull and cerebellum. Normally, the cerebellum and parts of the brain stem sit above the foramen magnum, an opening in the skull through which the spinal cord passes. When part of the cerebellum extends below the foramen magnum and into the upper spinal canal, it is called a Chiari malformation. Headache, especially after sudden coughing, sneezing, or straining, is the hallmark sign of a Chiari malformation. See National Institute of Neurological Disorders and Stroke Chiari Malformation Fact Sheet, available at https://www.ninds.nih.gov/Disorders/Patient-Caregiver-Education/Fact-Sheets/Chiari-Malformation-Fact-Sheet (last accessed Oct. 9, 2018).

impairment in the Listing of Impairments. (T. 118). Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with certain restrictions, including that she is limited to performing simple, routine tasks, and making simple work-related decisions. (T. 118-19). At step four, the ALJ determined that Plaintiff is unable to perform any of her past relevant work as a data entry clerk or as a social welfare eligibility examiner. (T. 123). At step five, the ALJ found that Plaintiff can perform the requirements of occupations such as a marker (Dictionary of Occupational Titles ("DOT") No. 209.587-034, light), router (DOT No. 222.587-034, light), and electric equipment assembler (DOT No. 729.687-010, light), with 291,922; 53,624; and 5,269 positions, respectively, in the national economy. (T. 123-24).

The ALJ issued an unfavorable decision on August 1, 2016. (T. 112-29). Plaintiff timely requested review of the ALJ's decision by the Appeals Council. (T. 244-45). The Appeals Council initially denied Plaintiff's request for review on September 25, 2017. (T. 96-99). On October 31, 2017, upon consideration of new evidence submitted by Plaintiff, the Appeals Council again denied

Plaintiff's request for review. (T. 1-4). Plaintiff instituted this action on November 10, 2017. (Docket No. 1).

**SCOPE OF REVIEW**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v.

Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

Plaintiff contends that remand is warranted for the following reasons: (1) the Commissioner failed to properly consider newly submitted evidence; (2) the ALJ improperly weighed medical evidence; and (3) the ALJ incorrectly found that Plaintiff could perform other work in the national economy. Defendant argues that the ALJ did not commit legal error and that his determination was supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court finds that the Commissioner's decision is legally erroneous and unsupported by substantial evidence. Therefore, the Court remands this matter to the Commissioner for further proceedings consistent with this Decision and Order.

**I. The Appeals Council Failed to Properly Assess Newly Submitted Evidence (Plaintiff's Argument 1)**

Plaintiff argues that the Appeals Council's decision to reject newly submitted medical evidence is erroneous as a matter of law and not supported by substantial evidence. (Plaintiff's Brief ("Pl's Br.") (Docket No. 8-1) at 12-15). On October 31, 2017, the Appeals Council denied Plaintiff's request for review because (1) the records from Guthrie Medical Group dated

5

August 10, 2016, to October 13, 2016; Thurber & Thurber dated August 25, 2016; Upstate Medical University dated August 31, 2016, to September 28, 2016; Arnot Health Services dated September 7, 2016, to October 4, 2016; Dr. Mary Ann Moore dated October 13, 2016; and Sherrie Adler-Gribble, FNP-C, dated August 1, 2017, did not relate to the period at issue; and (2) the records from Thurber & Thurber dated May 12, 2016, to June 23, 2016; Guthrie Medical Center dated July 28, 2016; and U.H.S. Wilson Medical Center dated September 15, 2016, did not show a reasonable probability that they would change the outcome of the ALJ's decision. (T. 1-4).

The Appeals Council must consider "new and material" evidence if it "relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b). The Second Circuit has "held that medical evidence generated after an ALJ's decision cannot deemed irrelevant solely because of timing." Newbury v. Astrue, 321 F. App'x 16, 18 n.2 (2d Cir. 2009) (summary order) (citing Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004)). Evidence that bears upon a claimant's condition subsequent to the ALJ's decision is pertinent if it discloses "the severity and continuity of impairments existing before the earning requirement date or [if

6

it] identif[ies] additional impairments, which could reasonably be presumed to have been present." Pollard, 377 F.3d at 194 (quoting Lisa v. Sec'y of Dep't of Health and Human Servs. of U.S., 940 F.2d 40, 43 (2d Cir. 1991)). Evidence that is generated after the ALJ's decision may nevertheless be relevant to the disability period if the "evidence directly supports [the claimant's] earlier contentions regarding [her] condition." Pollard, 377 F.3d at 193.

The Court finds that the records from Dr. Moore, Ms. Adler-Gribble, Arnot Health Services, Upstate Medical University, and Guthrie Medical Group demonstrate the continuing severity of Plaintiff's migraines and other psychiatric conditions. In particular, the records support Plaintiff's contention that she continues to suffer from multiple migraines a month, which several of Plaintiff's providers have stated would prevent her from being able to maintain proper work attendance and concentration. The Appeals Council's determination that these records were not relevant to the period as issue is not supported by substantial evidence.

Plaintiff has continuously treated with her primary care physician at Guthrie Medical Group since the alleged onset date. During these visits, Plaintiff consistently reported migraines,

including during a June 5, 2014 visit in which Plaintiff indicated she has had headaches for four to five days in a row. In addition, on September 4, 2014, Plaintiff indicated that her decompression surgery for her Chiari malformation "has not helped her pain at all." (T. 417). These records document that Plaintiff has received various treatments including decompression surgery and the placement of nerve blocks, and she has been prescribed Percocet regularly with minimal relief. The newly submitted records from Guthrie Medical Group dated from August 10, 2016, to October 13, 2016, are relevant because they indicate the continuing severity of Plaintiff's migraines and cognitive impairments. On August 10, 2016, Plaintiff indicated that her latest occipital nerve block procedure "did not help her pain" and that she continues to have pain "all the time" in her "occipital, frontal, and temporal area." (T. 60). Likewise, on September 8, 2016, Plaintiff indicated that she still gets "headaches and pain in the front of her head," she has "routine pain," and is going for an angiogram to further assess her brain aneurysm. (T. 42). The records from Guthrie Medical Group are relevant to the disability period as they indicate the ongoing severity of the Plaintiff's condition, and her inability to obtain relief despite trying various treatments.

Likewise, the records from Upstate Medical University dated August 31, 2016, to September 28, 2016, indicate that Plaintiff continued to suffer from migraines, which would impact her ability to maintain work attendance and concentration. On August 31, 2016, the Plaintiff presented to Dr. Yahia Lodi for a follow-up appointment due to a two-millimeter intracranial aneurysm that was discovered during the disability period. She indicated that she still has headaches, which extend around her forehead and to the top of her head. (T. 39). A cerebral angiogram was recommended and was found to be consistent with her aneurysm. (T. 36, 41). After the cerebral angiogram, Plaintiff suffered a "nervous breakdown" and an MRI of her brain showed spots in her left hemisphere. (T. 36). An additional MRI was scheduled in six months. (Id.). Dr. Lodi indicated that Plaintiff should "be vigilant about her symptoms" as he was concerned her aneurysm was going to enlarge or become symptomatic. (T. 94). Plaintiff had prior brain aneurysms and panic attacks, which were both documented during the disability period. (T. 545-46).

The records from Arnot Health Services covering the period from September 7, 2016, to October 4, 2016, as well as a report dated August 1, 2017, authored by Ms. Adler-Gribble, also indicate that Plaintiff continued to suffer from migraines,

9

anxiety, and depression. Plaintiff began treating with Ms. Adler-Gribble at Arnot Health Services before the ALJ's opinion. In January 2016, Ms. Adler-Gribble reported that Plaintiff "has a headache daily" and suffers from severe depression. (T. 1088-89). Likewise, on August 1, 2017, Ms. Adler-Gribble filled out a questionnaire regarding Plaintiff's continuing migraines and the effect these have on her daily activities. (T. 18-19). Ms. Adler-Gribble reported that Plaintiff would miss three days of work per month because of her conditions and would be off-task from work between fifteen to twenty percent of the time. (T. 19). She indicated that her answers reflected Plaintiff's condition from June 5, 2014, to the date of her opinion, which expressly includes the disability period. (Id.).

On October 13, 2016, Mary Ann Moore, Psy.D. performed a psychiatric evaluation. (T. 10-16). Dr. Moore opined that Plaintiff had "moderate to marked limitations in regard to appropriately dealing with stress, relating adequately with others, making appropriate work decisions, and maintaining a regular work schedule." (T. 14). In addition, Dr. Moore observed that Plaintiff had "moderate limitations in regard to maintaining attention and concentration." (T. 14). Although she was able to count and do simple calculations, Plaintiff displayed poor

judgment due to her anxiety and depression, her memory was impaired for more complex information, and she appeared "quite anxious." (T. 13-14). Plaintiff stated, "I do not go anywhere. What does it matter?" and that she does not "do too much of anything anymore." (T. 14). Dr. Moore further indicated that the examination results "appear to be consistent with psychiatric issues, which may significantly interfere with [Plaintiff's] ability to function on a daily basis." (T. 14). There is nothing in the record to suggest that Dr. Moore's opinion was based on new and unrelated conditions that Plaintiff did not already have prior to the ALJ's decision. Rather, Dr. Moore noted that Plaintiff continued to suffer from depression, anxiety, and other cognitive defects causing her to have difficulty in completing daily activities. (T. 15). Moreover, Dr. Moore's opinion was only rendered two months after the ALJ's opinion, and Plaintiff presented to Dr. Moore with the same complaints she had during the disability period. Thus, Dr. Moore's opinion is relevant to the period as issue.

The Appeals Council's determination to reject records from U.H.S. Wilson Medical Center dated September 15, 2016, because they did not show a reasonable possibility that they would not change the ALJ's opinion is also not supported by substantial

11

evidence. The records from U.H.S. Wilson Medical Center show that Plaintiff had a small aneurysm in her left paraophthalmic region. (T. 94). Dr. Lodi indicated that Plaintiff should "be vigilant about her symptoms" and, should she develop symptoms, she should present herself to the emergency department. (T. 36). He also recommended a follow-up MRI in March 2017. (Id.). The U.H.S. Wilson Medical Center record is consistent with the ongoing severity of Plaintiff's condition. Therefore, substantial evidence does not support that this record would not change the ALJ's decision.

Conversely, the Appeals Council's decision to reject records from Thurber & Thurber because they did not show a reasonable probability that they would change the outcome of the ALJ's decision is supported by substantial evidence. The records from Thurber & Thurber regarded Plaintiff's toe pain, which is unrelated to her non-exertional limitations, the only portion of the ALJ's RFC assessment challenged in this appeal. (T. 86-91). Likewise, the records from Guthrie Medical Center dated July 28, 2016, do not show a reasonable probability that they would change the outcome of the ALJ's decision as they involved Plaintiff's follow-up visit for her CPAP machine, in which she indicated she is "doing well" and has "no complaints." (T. 78-82). Therefore,

the Appeals Council's determination with respect to these records is supported by substantial evidence.

In sum, the Court finds that the Appeals Council's decision with regard to the newly submitted records from Dr. Mary Ann Moore, Sherrie Adler-Gribble FNP-C, Arnot Health Services, Upstate Medical University, U.H.S. Wilson Medical Center, and Guthrie Medical Group was unsupported by substantial evidence. Remand is required so that the ALJ, in the first instance, can consider these records and weigh the opinions offered by Ms. Adler-Gribble and Dr. Moore.

**II. The ALJ Failed to Properly Consider and Weigh the Medical Opinions of Plaintiff's Physicians (Plaintiff's Argument 2)**

Plaintiff also contends that the ALJ did not properly consider and weigh the medical opinions related to her ability to maintain an acceptable level of work pace and attendance. Pl's Br. at 15-21. The ALJ's RFC did not include any limitations on Plaintiff's ability to maintain an acceptable work pace or that Plaintiff would require absences from work. The ALJ weighed the opinions of Dr. Sara Long and Dr. Christopher Yanusas to support her finding that Plaintiff would be able to maintain a regular work schedule. (T. 121-22).

Under the Commissioner's regulations, an ALJ is required to "evaluate every medical opinion [he] receives." 20 C.F.R.

§ 416.927(c). The regulations also provide that opinions from non-treating physicians are to be evaluated using the same factors as used in the weighing of opinions from treating physicians. 20 C.F.R. § 404.1527(f)(1). To determine how much weight to give an opinion, the ALJ should consider factors such as "(i) the frequency of examination, and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." 20 C.F.R. § 404.1527(d)(2).

The ALJ assigned "little weight" to the opinion by clinical psychologist Dr. Yanusas, who conducted a neuropsychological examination of Plaintiff at the request of her treatment providers on May 20, 2016. (T. 122, 1102-06). Dr. Yanusas opined that Plaintiff "would have difficulty maintaining gainful employment due to frequen[t] absences [that] the severity of her chronic pain would cause." (T. 1106). The ALJ discounted Dr. Yanusas's opinion, because "he did not explain well the correlation between pain and absences in his opinion [or] that

14

the claimant would have frequent absences due to [the] severity of her chronic pain." (T. 122). While the ALJ does properly consider that Dr. Yanusas is not a pain-management specialist, substantial evidence does not support the ALJ's weighing of his opinion, particularly when considering it alongside the opinions of Ms. Adler-Gribble and Dr. Moore, which were improperly rejected by the Appeals Council. Ms. Adler-Gribble opined that Plaintiff would miss three work days per month and be off task between fifteen to twenty percent of the time. (T. 19). While Ms. Adler-Gribble, a certified family nurse practitioner, is not traditionally an "acceptable medical source," she has had a fairly lengthy treating relationship with Plaintiff. Moreover, the Commissioner's policy statements provide that opinions from "other sources" such as Ms. Adler-Gribble are still "important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-03p, 2006 WL 2329939, at *3 (S.S.A. August 9, 2009). This policy ruling recognizes that nurse practitioners have assumed a greater percentage of treatment and evaluation, which had previously been handled primarily by physicians and psychologists. (Id.). Likewise, Dr. Moore opined that Plaintiff has a moderate to marked ability to maintain a regular work schedule and has "moderate limitations in regard to

maintaining attention and concentration." (T. 14). Dr. Moore, a licensed psychologist, is an "acceptable medical source," who can render an opinion that may be entitled to controlling weight. SSR 06-03p, 2006 WL 2329939, at *1.

Ms. Adler-Gribble's and Dr. Moore's opinions are also consistent with Dr. Yanusas's findings based on Plaintiff's test results. He indicated that the Plaintiff has migraines, depression, and anxiety. (T. 1105). Dr. Yanusas reported that the Plaintiff is "easily overwhelmed and daily activities are much [too] difficult for her to complete" as she has chronic pain daily. (T. 1103). In particular, Dr. Yanusas found that Plaintiff had difficulties in maintaining attention and with her visual, working, and short-term memory. (T. 1104). Plaintiff's concentration difficulties were found to make "her inefficient when completing multi-task procedures and having to process information quickly at times." (T. 1105). He also noted that "her weakness in visual memory should be monitored as this [could] possibly represent a residual effect of [her] aneurysm." (Id.). Dr. Yanusas noted that Plaintiff's memory loss appeared to be "the result of premorbid weakness in concentration and memory combined with chronic pain associated with her recent history of neurological complications and associated depression and

anxiety." (T. 1106). The ALJ did not address the test results obtained by Dr. Yanusas regarding her limitations in maintaining attention, concentration, and work pace, or the impact of these limitations on Plaintiff's ability to perform substantial gainful employment on a full-time basis. This error was not harmless in light of the VE's testimony that an employer would not tolerate a worker being off task 20 percent of the workday, and that if a worker dropped under 15 percent, there would be an erosion of at least fifty percent of the jobs. (T. 156-57). In addition, the VE testified that most employers would permit one day of absence per month and would permit two absences per month if the employer had an absentee policy. (T. 156). The VE also opined that if an employee was consistently absent two to three times per month, she would be unable to sustain employment. (Id.).

As Plaintiff points out, the opinion of consultative psychologist Dr. Long is the only arguably contrary medical evidence regarding Plaintiff's ability to concentrate and maintain a regular work schedule. Dr. Long evaluated Plaintiff on January 6, 2015 (T. 121-22, 565-68), and opined that she could maintain a regular schedule, could perform complex tasks, was able to learn new tasks, and could maintain attention and concentration. (Id.) Dr. Long noted that "[t]he results of the

17

present evaluation appear to be consistent with psychiatric and cognitive problems, which may, at this time, interfere with her ability to function on a regular basis." (Id.). The ALJ observed that Dr. Long was not a treating source and failed to identify any areas of actual functional limitation. (T. 122). Therefore, the ALJ found, Dr. Long's opinion about the consistency of her evaluation with Plaintiff's mental health complaints was entitled to "some weight." Although the ALJ stated that she was assigning only "some weight" to Dr. Long's opinion, she evidently credited the absence of functional limitations in that opinion when formulating Plaintiff's RFC. This was erroneous. While Dr. Yanusas administered extensive neuropsychological testing, Dr. Long's evaluation of Plaintiff's concentration and memory was based solely on a brief mental status examination. In addition, unlike Dr. Yanusas, Dr. Long apparently did not consider the effect of Plaintiff's severe medical impairments on her abilities to maintain a regular work schedule and appropriately maintain attention, concentration, and pace.

For the foregoing reasons, remand is required so that the ALJ can re-weigh Dr. Yanusas's and Dr. Long's opinion.

## III. Failure to Present Complete Hypotheticals to VE at Step Five (Plaintiff's Argument 3)

Plaintiff also argues that the ALJ incorrectly concluded she could perform other work in the national economy because the hypotheticals presented to the VE did not include her limitations with respect to her fatigue, pain, cognitive difficulties, and impairments related to her work pace and attendance. Pl's Br. at 21-22. Because the Court has found that remand is necessary to address errors made at earlier steps of the sequential evaluation, it declines to rule on Plaintiff's step-five claim at this time.

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision is legally erroneous and unsupported by substantial evidence. Accordingly, Plaintiff's Motion for Judgment on the pleadings is granted to the extent that the Commissioner's decision is reversed, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. In particular, on remand, the Commissioner is directed to (1) consider the new and material evidence submitted by Plaintiff to the Appeals Council; (2) weigh the opinions of Ms. Adler-Gribble and Dr. Moore, which were included as part of the new evidence submitted to the

Appeals Council; (3) reweigh the opinions of Dr. Yanusas and Dr. Long; and, if necessary, reformulate Plaintiff's RFC and consult with a VE. Defendant's Motion for Judgment on the Pleadings is denied. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated:   October 11, 2018
         Rochester, New York